BURBANK GREASE SERVICES, LLC,
Plaintiff-Appellant,†

v.

Larry SOKOLOWSKI, United Grease LLC and United
Liquid Waste Recycling, Inc.,
Defendants-Respondents.

Court of Appeals

*No. 04–0468. Submitted on briefs September 7, 2004.—Decided
January 20, 2005.*

2005 WI App 28

(Also reported in 693 N.W.2d 89.)

† Petition to review granted 5-11-2005.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Michael L. Hermes* and *Christopher M. Toner* of *Metzler and Hager, S.C.*, Green Bay.

On behalf of the defendants-respondents, Larry Sokolowski, the cause was submitted on the brief of *Stephen J. Eisenberg* and *Pam M. Baumgartner* of *Eisenberg Law Offices, S.C.*, Madison; and on behalf of the defendants-respondents, United Grease, LLC and United Liquid Waste Recycling, Inc., the cause was submitted on the brief of *David E. McFarlane* and *Mark H.T. Fuhrman* of *Bell, Gierhart & Moore, S.C.*, Madison.

Before Dykman, Vergeront and Higginbotham, JJ.

¶ 1. VERGERONT, J. Burbank Grease Services, LLC, appeals the circuit court's order dismissing on summary judgment its claims of misappropriation of a trade secret, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and computer crimes. Based on the undisputed facts, we conclude: (1) the customer information Burbank asserts is a trade secret does not meet the standard in WIS. STAT. § 134.90(1)(c)1;[1] (2) the claims of breach of fiduciary duty against Larry Sokolowski and aiding and abetting that breach against United Grease, LLC and United Liquid Waste Recycling, Inc., are preempted by § 134.90(6); and (3) Sokolowski did not take computer data from Burbank without authorization in violation of WIS. STAT. § 943.70(2)(a)6. Accordingly, the circuit court correctly granted summary judgment against Burbank on the four claims and we affirm.

## BACKGROUND

¶ 2. Burbank[2] is engaged in the business of collecting and processing used restaurant fry grease, trap grease, and industrial grease. At the relevant time, Burbank had approximately 11,250 customers in Wisconsin and 3,200 in surrounding states. The majority of Burbank's customers are restaurants; at the relevant time about 65% were restaurants, about 34% were grease trap customers, and less than 1%—about fifteen —were industrial customers.[3] Sokolowski was em-

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[2] Burbank was purchased by Anamax Group in 1998, but retained the name "Burbank."

[3] Burbank's submissions contain conflicting numbers on these points, but the exact numbers do not affect the outcome of this appeal.

ployed by Burbank in various management positions from November 1997 to April 2001. Approximately six months prior to leaving Burbank, Sokolowski was made procurement/territory manager. In that position he oversaw sales people, managed customer relations with industrial clients, and prepared spreadsheets and billings for the accountant. During Sokolowski's employment he sometimes worked at home to meet deadlines, with the knowledge and approval of Burbank.

¶ 3. In October 1998, Burbank distributed a code of conduct that it required all managers to acknowledge and adhere to. Sokolowski acknowledged in writing that he received the code. The code provided that "[n]o . . . employee shall disclose any confidential or privileged information to any person within the Company who does not have a need to know or to any outside individual or organization except as required in the normal course of business." In April 1999, all Burbank employees received an employee handbook that contained a provision stating that employees who improperly used or disclosed trade secret or confidential business information, which was defined to include customer lists, would be subject to disciplinary action including termination. The provision also stated that employees may be required to sign a nondisclosure agreement as a condition of employment. Sokolowski was never asked to sign a nondisclosure agreement and there is no evidence any other employee was asked to do so. Sokolowski was also never asked to sign a noncompete agreement.

¶ 4. In April 2001, Sokolowski resigned his employment with Burbank and began to work for United Liquid as a sales and customer service representative. United Liquid provides waste and cake sludge waste hauling services to industrial, municipal, and commer-

703

cial clients in Wisconsin, as well as glass, can, and plastic recycling. United Liquid had the ability to handle grease trap collection, but that was a small part of its business. In October 2001, Sokolowski and the shareholders and officers of United Liquid formed United Grease, which began collecting fry grease, trap grease, and industrial grease.

¶ 5. According to Sokolowski's testimony, sometime after United Grease was formed, he discovered that he still had materials at home from projects he had worked on at home while employed by Burbank. The materials relevant to this appeal are: (1) a hardcopy of a December 2000 partial list of Burbank's grease trap customers, containing about 2,400 names, phone numbers and addresses, sometimes a contact person, the total gallons for the grease traps, and pricing for the small restaurants but no pricing for chain restaurants and large industrial customers;[4] (2) on a computer disk, a 1998 spreadsheet of Burbank's industrial clients that showed the amount of grease collected from each customer times the market rate less a processing fee, which determined what Burbank would pay the customer for the material collected; and (3) also on the computer disk, a spreadsheet showing the amount of collections and revenues per customer for certain drivers in 1998, organized by the driver's route. We will refer to these three items of information collectively as

---

[4] The description of this list is based on Sokolowski's testimony, which was not disputed. He testified that he destroyed the hardcopy and therefore the actual list was not in evidence. There is some inconsistency in Sokolowski's testimony on whether this list contained phone numbers, but we have inferred it did, since that inference is arguably more favorable to Burbank.

Burbank's "customer information."[5] It is undisputed that, although Burbank authorized Sokolowski to take home information to work on projects for Burbank, including customer information, when Sokolowski left Burbank's employ, Burbank did not ask Sokolowski whether he had any customer or other information from Burbank at home or ask him to return any such information.

¶ 6. Sokolowski testified that, after United Grease had been in operation several months, he brought the December 2000 grease trap customer list and the computer disk to work. He entered information from the 2000 grease trap customer list into United Liquid's computer system, including the name of the restaurant, phone number, address, approximate size of the grease trap, and the approximate pricing, and he used this information to solicit customers for United Grease. Sokolowski also testified that he used the 1998 spreadsheet of Burbank's industrial clients to create his own spreadsheet to use in soliciting industrial customers for United Grease. He did not, he testified, use the 1998 driver spreadsheet.

¶ 7. According to Sokolowski, United Grease acquired about eighty fry grease customers, almost all former Burbank customers, and 157 grease trap customers, of which all but sixty to seventy were former Burbank customers. As for industrial customers, the evidence shows that United Grease acquired either one or two of Burbank's former customers.

¶ 8. Eventually Burbank became aware that Sokolowski was soliciting its customers and filed this action. The complaint alleged: (1) Sokolowski misap-

---

[5] The computer disk also contained additional information from Sokolowski's employment by Burbank that Burbank does not contend is trade secret or confidential information.

propriated Burbank's trade secrets in violation of Wɪs. STAT. § 134.90; (2) Sokolowski breached his fiduciary duty to his principal, Burbank; (3) United Grease and United Liquid Waste aided and abetted Sokolowski in breaching his fiduciary duty; and (4) Sokolowski willfully and knowingly took possession of computer data from Burbank's computer system without authorization in violation of Wɪs. STAT. § 943.70(2). All parties filed motions for summary judgment and the circuit court granted the defendants' motions, dismissing the complaint.

¶ 9. The circuit court agreed with the parties that there were no genuine issues of material fact. With respect to the trade secret claim, the circuit court concluded that no independent economic value was derived from the customer information because it was generally known and readily ascertainable by proper means such as approaching restaurant personnel and inquiring about their rates and, alternatively, Burbank did not make reasonable efforts to maintain the secrecy of the information. With respect to the two breach of fiduciary duty claims, the court agreed with the defendants that these claims were preempted by Wɪs. STAT. § 134.90(6). Finally, in addressing Burbank's arguments that Sokolowski committed a computer crime under Wɪs. STAT. § 943.70(2), the court concluded there was no violation of subd. (2)(a)4 because Sokolowski was authorized to take possession of the computer disks at the time he took possession. The court declined to address Burbank's arguments that Sokolowski violated other subdivisions of para. (2)(a) because Burbank had not pleaded those violations in its complaint. Burbank challenges on appeal the circuit court's grant of summary judgment against it on these four claims.[6]

---

[6] The complaint also alleged claims of interference with

## DISCUSSION

¶ 10. In reviewing the grant or denial of a summary judgment, we apply the same methodology as the trial court and review de novo the grant or denial of summary judgment. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987). Summary judgment is proper if there are no genuine issues of material fact and one party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2). In evaluating the evidence, we draw all reasonable inferences from the evidence in the light most favorable to the non-moving party. *Grams v. Boss*, 97 Wis. 2d 332, 339, 294 N.W.2d 473 (1980). Whether an inference is reasonable and whether more than one reasonable inference may be drawn are questions of law. *Hennekens v. Hoerl*, 160 Wis. 2d 144, 162, 465 N.W.2d 812 (1991).

I. *Misappropriation of a Trade Secret, WIS. STAT. § 134.90*

¶ 11. WISCONSIN STAT. § 134.90(2) provides that "[n]o person . . . may misappropriate . . . a trade secret by . . . [a]cquiring the trade secret of another by means which the person knows or has reason to know constitute improper means . . . or by disclosing or using without express or implied consent the trade secret of another" under certain specified circumstances. Section 134.90(1)(c) defines a trade secret as

---

business relations by Sokolowski and United Grease and conspiracy by all three defendants. The circuit court granted summary judgment in favor of the defendants on these claims, and Burbank has not appealed the dismissal of those claims.

[I]nformation, including a formula, pattern, compilation, program, device, method, technique or process to which all of the following apply:

1. The information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

2. The information is the subject of efforts to maintain its secrecy that are reasonable under the circumstances.

¶ 12. Burbank asserts there is evidence showing that its customer information meets the definition of a trade secret and therefore the circuit court erred in weighing the competing evidence rather than letting a jury decide. We observe that this appellate position appears to be inconsistent with Burbank's argument to the circuit court that it was entitled to summary judgment on the trade secret claim. Nevertheless, because we independently review the record on an appeal from a summary judgment, we will address Burbank's appellate argument that there are factual disputes that are necessary to resolve before deciding if the criteria in WIS. STAT. § 134.90(1)(c) are met.

¶ 13. We first consider WIS. STAT. § 134.90(1)(c)1. Burbank contends the evidence shows that its customer information is not generally known or readily ascertainable and that it is of economic value to a competitor like United Grease because it saves United Grease time necessary to compile its own list of customers. Burbank also argues that it is advantageous for a competitor to know the prices Burbank charges when soliciting Burbank's customers because the competitor can then offer a lower price.

708

¶ 14. Customer lists may, depending on the circumstances, meet the definition of a trade secret under WIS. STAT. § 134.90(1)(c). *Minuteman, Inc. v. Alexander*, 147 Wis. 2d 842, 857, 434 N.W.2d 773 (1989). In cases decided before § 134.90 was enacted, the supreme court applied the six factors in RESTATEMENT, 4 TORTS, § 757 to decide whether customer lists were trade secrets.[7] The supreme court decided customer lists were not trade secrets in the following cases: *Abbott Labs. v. Norse Chem. Corp.*, 33 Wis. 2d 445, 463, 466, 147 N.W.2d 529 (1967) (names, addresses, and contact persons for customers of an artificial sweetener, where evidence was that the customers were common knowledge within the industry and the lists did not contain complicated marketing data on projected needs of the customers or market habits); *American Welding & Eng'g Co. v. Luebke*, 37 Wis. 2d 697, 702, 155 N.W.2d 576 (1968) (names, addresses, phone number of the customer, sometimes the names of a number of employees and positions of various individuals for customers of a manufacturer of steel products); *Gary Van Zeeland Talent, Inc. v. Sandas*, 84 Wis. 2d 202, 211–12, 216, 267 N.W.2d 242 (1978) (talent agency's list of club names

---

[7] The six factors are:

(1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Corroon & Black v. Hosch*, 109 Wis. 2d 290, 295, 325 N.W.2d 883 (1982) (citing RESTATEMENT, 4 TORTS, § 757 cmt. b (1939)).

709

where evidence showed the names were readily available by means of inquiry from established sources—telephone directories, chambers of commerce, and newspaper advertising); and *Corroon & Black v. Hosch*, 109 Wis. 2d 290, 296–97, 325 N.W.2d 883 (1982) (insurance agency's list of names and address of insurance policy holders, contact names, renewal dates, and amounts of coverage). The rationale underlying these cases, in general, is that the customer lists involved were "merely the outgrowth of normal marketing endeavors" and "the time and money expended . . . were spent on develop[ing] the market [that] the . . . list represent[ed], rather than on the compilation of the information." *Id.* at 297.

¶ 15. In a subsequent case, *B.C. Ziegler & Co. v. Ehren*, 141 Wis. 2d 19, 28–29, 414 N.W.2d 48 (1987), the supreme court did accord trade secret status to a securities underwriter's list that identified persons who had invested in the securities, had sufficient money to make investments, and regularly invested in bonds as opposed to other investments. The court distinguished this list from those in the prior cases on, among other grounds, the fact that this list contained "specialized information" and was not "merely a function of record keeping, a byproduct of a business, but was in a significant sense a vital asset of the business upon which efforts and money were expended in its own right." *Id.* at 28.

¶ 16. After WIS. STAT. § 134.90 was enacted, the supreme court in *Minuteman*, 147 Wis. 2d at 857, reversed and remanded the lower courts' decisions that a furniture stripper's list of inquiries in response to advertisements and list of customer names and orders were not trade secrets. The supreme court did so because the lower courts had applied the six Restate-

ment factors. While the supreme court stated that those factors were still helpful, *id.* at 853, it concluded that a remand was necessary to allow the circuit court to apply the legal standard embodied in the recently enacted § 134.90. *Id.* at 857. In noting that "[s]ome customer lists are afforded protection under the UTSA [Uniform Trade Secret Act]," the supreme court quoted with approval from an Indiana case:

> This is not to say that every customer list would be denied trade secret status under the uniform act. We are well aware, for example, . . . that in certain sectors of the business community identical or nearly identical products and/or services are sold to a small, fixed group of purchasers. In such an intensely purchaser-oriented market, a supplier's customer list could well constitute a trade secret.

*Id.* (citation omitted).

¶ 17. This court relied on the above-quoted language in *ECT Int'l, Inc. v. Zwerlein*, 228 Wis. 2d 343, 353, 597 N.W.2d 479 (Ct. App. 1999), to conclude that the customer lists and prospect lists belonging to the distributor of software used in the design and documentation of electrical systems met the requirements of WIS. STAT. § 134.90(1)(c)1.

¶ 18. Other than *ECT*, we are not aware of any reported Wisconsin case decided after *Minuteman* that addresses whether a customer list meets the requirements of WIS. STAT. § 134.90(1)(c)1.[8] We are uncertain

---

[8] The Seventh Circuit Court of Appeals, applying *Minuteman*, concluded that a list of purchasers of a company that produced water treatment chemicals and services was not a trade secret under WIS. STAT. § 134.90 because the "group of purchasers . . . [were] neither fixed nor small, the products

from our reading of *Minuteman* whether the supreme court intended that the rationale it had expressed in its previous decisions on customer lists remain valid after the enactment of § 134.90. However, we need not resolve that uncertainty in this case because a straightforward application of the language of § 134.90(1)(c)1 to the undisputed facts of this case persuades us that the names, addresses, and contact persons of Burbank's customers are readily ascertainable by proper means. The undisputed evidence is that any business that cooks or processes food is a potential customer for the services Burbank provides, and Burbank's own witnesses acknowledge that anyone can identify the businesses that likely have a need for the services Burbank provides from such common sources as the telephone book, the internet, and trade associations. As for contact persons, the evidence is that one can find that out by asking at the business.

¶ 19. Apparently aware of the weakness of an argument that its customers' names, addresses, and contact persons are not readily ascertainable, Burbank emphasizes that the inclusion of the pricing information requires a different result. The undisputed evidence is that the price for the industrial customers was determined by the number of pounds of grease collected times the market rate less a fee for processing, and this was standard in the industry. According to Burbank's witnesses, the charge for fry grease is a per collection charge and for trap grease the charge is per volume with some additional charges if extra services are required. There is no evidence that these methods of charging were unique to Burbank. Sokolowski testified

[were] used in . . . common items," and "[t]he target market for the products [was] broad . . . ." *Nalco Chem. Co. v. Hydro Techs., Inc.*, 984 F.2d 801, 804 (7th Cir. 1993).

that Burbank had three price groups for fry grease customers when he left and two for trap grease, and there was no contradictory testimony on this point.[9]

¶ 20. Burbank does not appear to assert that its method of establishing a price for customers is unique or complicated; rather, it seeks to protect the information of the actual price charged a customer at a particular time. Burbank relies on testimony that, according to Burbank, shows that customers will not tell a competitor what they are already paying for the services because they are in a better bargaining position if they hear the offer first. This testimony, asserts Burbank, conflicts with Sokolowski's testimony that one can readily find out the price a customer of another company is being charged by asking. Thus, Burbank's position is that it is entitled to a trial on whether the price information accompanying some of the customers' names is a trade secret.

¶ 21. There appears to be no reported Wisconsin case addressing the trade secret status of pricing information. However, because WIS. STAT. § 134.90 is Wisconsin's version of the UTSA, we may look for guidance in decisions of other jurisdictions interpreting this provision. *World Wide Prosthetic Supply, Inc. v. Mikulsky*, 2002 WI 26, ¶ 9, 251 Wis. 2d 45, 640 N.W.2d 764. In doing so, we bear in mind that § 134.90(7) requires that § 134.90 be "applied and construed to make uniform the law relating to misappropriation of trade secrets among states enacting substantially identical laws."

---

[9] Burbank does not make clear whether there was any information about fry grease customers on the three sets of information it contends are a trade secret, but we include the prices for these customers nonetheless.

¶ 22. Generally, it appears that when prices are based on complicated or unique formulas that the customers do not know about, courts conclude the information meets the standard embodied in Wis. Stat. § 134.90(1)(c)1. *See, e.g., Pepsico, Inc. v. Redmond*, No. 94–C-6838, 1996 WL 3965, ¶¶ 11–12 (N.D. Ill. Jan. 2, 1996);[10] *Hydraulic Exch. and Repair, Inc. v. KM Specialty Pumps, Inc.*, 690 N.E.2d 782, 786 (Ind. Ct. App. 1998). *See also Den-Tal-Ez Inc. v. Siemens Capital Corp.*, 566 A.2d 1214, 1230 (Pa. Super. Ct. 1988) (decided under Restatement of Torts § 757 (1939), not the UTSA). However, when there is no such unique or complicated information behind the pricing, the actual price charged does not meet that standard because—in the absence of special circumstances—it can be readily ascertainable from the customers themselves by proper means. *See, e.g., IVS Hydro, Inc. v. Robinson*, Nos. 03-1827, 03-1898, 2004 WL 626828, at *5-6 (4th Cir. Mar. 31, 2004 (W. Va.)); *Unisource Worldwide, Inc. v. Carrara*, 244 F. Supp. 2d 977, 986–87 (C.D. Ill. 2003); *Conagra, Inc. v. Tyson Foods, Inc.*, 30 S.W.3d 725, 729–30 (Ark. 2000); *Carbonic Fire Extinguishers, Inc. v. Heath*, 547 N.E.2d 675, 678 (Ill. App. Ct. 1989). *See also Carpetmaster of Latham, Ltd. v. Du Pont Flooring Sys., Inc.*, 12 F. Supp. 2d 257, 261–62 (N.D. N.Y. 1998) (decided under Restatement of Torts § 757 (1939), not UTSA). One of the special circumstances is a contract that prohibits customers from disclosing the price. *See Northern States Power Co. v. North Dakota Pub. Serv. Comm'n*, 502 N.W.2d 240, 241, 243 (N.D. 1993).

¶ 23. We conclude this general approach is sound and apply it here. There is no evidence that Burbank's

---

[10] We may cite to unpublished opinions from other jurisdictions. *Predick v. O'Connor*, 2003 WI App 46, ¶ 12 n.7, 260 Wis. 2d 323, 660 N.W.2d 1.

prices are based on information not known to the customers. There is also no evidence of a contract prohibiting Burbank's customers from disclosing the price Burbank charges, nor is there evidence that it is the custom in this industry for customers not to disclose the prices they are charged. Viewed most favorably to Burbank, the evidence from its own witnesses is that customers do disclose the prices they pay, although particular customers may choose not to do so in particular situations. Indeed, the only reasonable inference from the evidence is that Burbank determines what price to charge at least in part based on what competitors are charging, which it learns from customers. We conclude the evidence is insufficient, as a matter of law, to show that the prices Burbank charges its customers are not readily ascertainable by proper means.[11]

¶ 24. Because we conclude the evidence, viewed most favorably to Burbank, does not show that the information Burbank seeks to protect meets the requirements of Wis. Stat. § 134.90(1)(c)1, Burbank is not entitled to a trial on its trade secret claim. This conclusion makes it unnecessary for us to address whether Burbank made reasonable efforts under the circumstances to maintain the secrecy of this information, as required by § 134.90(1)(c)2.

II. *Preemption of Breach of Fiduciary Duty Claims, Wis. Stat. § 134.90(6)*

¶ 25. Burbank contends the circuit court erred in concluding that its common law breach of fiduciary

---

[11] Because of this conclusion, we need not address the respondents' argument that the 1998 industrial customer information has no economic value because of its age and the 1998 driver list has no economic value for that and other reasons.

duty claims—the claim that Sokolowski breached his fiduciary duty to Burbank and the claim that United Grease and United Liquid Waste aided and abetted Sokolowski in that breach—were preempted by Wis. Stat. § 134.90(6). This subsection provides:

> **(6)** Effect on Other Laws. (a) Except as provided in par. (b), this section displaces conflicting tort law, restitutionary law and any other law of this state providing a civil remedy for misappropriation of a trade secret.
>
> (b) This section does not affect any of the following:
>
> 1. Any contractual remedy, whether or not based upon misappropriation of a trade secret.
>
> 2. Any civil remedy not based upon misappropriation of a trade secret.
>
> 3. Any criminal remedy, whether or not based upon misappropriation of a trade secret.

¶ 26. According to Burbank, this provision means that, if a plaintiff has a claim for unauthorized use of confidential information that meets the statutory criteria of Wis. Stat. § 134.90(1) and (2), that claim must be brought under the statute, but if the statutory criteria are not met, there is no preemption of any common law claim that might exist based on the unauthorized use of the information. Alternatively, Burbank argues that, even if § 134.90(6) means that all claims based solely on the unauthorized use of confidential information are preempted, its breach of fiduciary duty claims are not based solely on the unauthorized use of its confidential information and therefore they are not preempted.

¶ 27. The respondents assert that, because the information Burbank seeks to protect does not meet the

statutory definition of a trade secret, any claim that is based solely on the unauthorized use of that information is preempted. In their view, the breach of fiduciary duty claims are based solely on the unauthorized use of Burbank's customer information.

¶ 28. The only Wisconsin case we have located discussing WIS. STAT. § 134.90(6) is *Minuteman*, 147 Wis. 2d 842, 434 N.W.2d 773 (1989). There the court ruled that, based on § 134.90(6)(a), the test it had established for a trade secret in *Corroon & Black*, 109 Wis. 2d 290, 325 N.W.2d 883 (1982), was no longer the legal standard. 147 Wis. 2d at 852. This brief ruling does not resolve the preemption issues presented on this appeal. We therefore consider cases from other jurisdictions.

¶ 29. The first issue we address is whether WIS. STAT. § 134.90(6)(a) preempts common law claims for unauthorized use of allegedly confidential information that does not meet the statutory definition of a trade secret. Based on our own research and the cases provided by the parties, it is evident that the majority of cases in other jurisdictions addressing this issue have decided that such claims are preempted. The rationale for this conclusion is that the purpose of the preemption provision is to preserve a single tort action under state law for misappropriation of a trade secret as defined in the statute and thus to eliminate other tort causes of action founded on allegations of misappropriation of information that may not meet the statutory standard for a trade secret. *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 755 F. Supp. 635, 637 (D. Del. 1991). *See also Composite Marine Propellers v. Van Der Woude*, 962 F.2d 1263, 1265 (7th Cir. 1992) (the preemption provision of the Illinois statute "abolishe[s] all

common law theories of misuse of confidential information . . . . Unless defendants misappropriated a (statutory) trade secret, they did no legal wrong."); *Thomas & Betts Corp. v. Panduit Corp*, 108 F. Supp. 2d 968, 971 (N.D. Ill. 2000) (the Illinois Trade Secrets Act was meant " 'to codify all the various common law remedies for theft of ideas' ") (citing *Learning Curve Toys, L.P. v. Playwood Toys, Inc.*, No. 94–C-6884, 1999 WL 529572, at *3 (N.D. Ill. July 20, 1999)); *Smithfield Ham & Prods. Co., Inc. v. Portion Pac., Inc.*, 905 F. Supp. 346, 348 (E.D. Va. 1995) (purpose of the preemption provision is to "prevent inconsistent theories of relief for the same underlying harm by eliminating alternative theories of common law recovery which are premised on the misappropriation of a trade secret").

¶ 30. If a common law claim for unauthorized use of information that did not meet the statutory definition of a trade secret were permitted, the result "would undermine the uniformity and clarity that motivated the creation and passage of the Uniform Act." *Auto Channel, Inc. v. Speedvision Network, LLC*, 144 F. Supp. 2d 784, 789 (W.D. Ky. 2001). *See also Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 270 F. Supp. 2d 943, 949 (W.D. Mich. 2003) (allowing otherwise displaced tort claims to proceed on the basis that the information may not rise to the level of a trade secret would defeat the purpose of the UTSA); *Thomas & Betts*, 108 F. Supp. 2d at 972–73 (if there were no preemption when the confidential information might not rise to the level of a trade secret, the preemption provision would be meaningless).

¶ 31. Burbank appears to argue that our preemption analysis should depend on whether the common law claim is denominated as breach of fiduciary duty rather than unauthorized use of confidential informa-

718

tion, perhaps implicitly suggesting that the latter claim would be preempted, but certainly arguing that the former is not. However, the majority of the courts that have considered the issue have not relied on the label of the common law claim, but have examined the facts alleged or proved in support of the claim to determine whether they are the same facts that support the statutory claim for the misappropriation of a trade secret. *See, e.g., Weins v. Sporleder,* 605 N.W.2d 488, 491 (S.D. 2000). When the common law claims, however denominated, are based solely on the facts that support the statutory claim for a misappropriation of a trade secret, the majority of courts considering this issue have concluded that the common law claims are preempted.

¶ 32. Using this approach, numerous courts have concluded that claims for breach of fiduciary duty are preempted when the breach is the alleged unauthorized use of confidential information. *Omnitech Int'l, Inc. v. Clorox Co.,* 11 F.3d 1316, 1330 (5th Cir. 1994) (Louisiana statute; breach of fiduciary duty claim preempted because based solely on allegations that support misappropriation of trade secret claim).; *Composite Marine Propellers,* 962 F.2d at 1265; *Auto Channel,* 144 F. Supp. 2d at 789–90 (breach of fiduciary duty claim preempted to extent it involves disclosure of trade secrets); *Automed Techs., Inc. v. Eller,* 160 F. Supp. 2d 915, 922 (N.D. Ill. 2001); *Thomas & Betts,* 108 F. Supp. 2d at 972–73; *Thermodyne Food Serv. Prods., Inc. v. McDonald's Corp.,* 940 F. Supp. 1300, 1309 (N.D. Ill. 1996), *Frantz v. Johnson,* 999 P.2d 351, 358 n.3 (Nev. 2000) (breach of fiduciary claim and other claims preempted because they are "completely dependent on the facts concerning misappropriation of trade secrets"). The rationale in these cases is that "breaching a duty of

loyalty by using confidential information is still misappropriation of a trade secret," *Automed Techs,* 160 F. Supp. 2d at 922; or, put differently, "fiduciary duty" adds nothing of significance when there is no independent basis for such duty. *Composite Marine Propellers,* 962 F.2d at 1265.

¶ 33. On the other hand, where a claim for breach of fiduciary duty is based on allegations or factual showings that are not solely dependent on misappropriation of a trade secret or unauthorized use of allegedly confidential information, courts have concluded there is no preemption. *Lucini Italia Co. v. Grappolini,* 231 F. Supp. 2d 764, 770 (N.D. Ill. 2002) (declining to dismiss claim for breach of fiduciary duty because the factual allegations—that the plaintiff's consultant used his position of trust to contract on his own behalf for his own interests—were independent of the misappropriation of trade secret claim); *Automed Techs.,* 160 F. Supp. 2d at 922 (allowing claim for breach of fiduciary duty to proceed to the extent it was based on soliciting former co-employees to compete against former employer); *Paint Brush Corp. v. Neu,* 599 N.W.2d 384, 393 (S.D. 1999) (holding that breach of duty of loyalty claim based on evidence that defendant was taking steps to compete with employer while still employed was not preempted).[12]

---

[12] A federal court in Wisconsin adopted this approach in *Corporate Express Office Prods. v. Brown,* Nos. 00–C–608–C, 00–C–666–C, 2001 WL 34381111, at *12 (W.D. Wis. July 18, 2001), concluding that the breach of fiduciary duty claim was preempted insofar as it was based on the allegations of misappropriation of a trade secret, but not preempted insofar as it was based on allegations that the defendant conspired to take business away from his employer and failed to have another employee sign a noncompete agreement. *Id.* The court went on to conclude, however, that the breach of fiduciary duty claim

¶ 34. Burbank urges us to follow the approach of a minority of cases holding that claims are not pre-

should nonetheless be dismissed on summary judgment because no evidence was presented to support the allegation regarding the noncompete agreement and the evidence regarding taking business did not establish that the defendant did anything more than investigate other employment opportunities while still employed by the plaintiff. *Id.* at *13–14.

Courts have followed this same analysis with other types of common law claims, concluding they are preempted when they are based solely on, or to the extent they are based on, the allegations or the factual showings of unauthorized use of confidential information or misappropriation of a trade secret. *See Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1297–98 (11th Cir. 2003) (Georgia statute; conversion, breach of confidential relationship and duty of good faith, unjust enrichment and quantum meruit); *On-Line Techs. v. Perkin Elmer Corp.*, 141 F. Supp. 2d 246, 260–61 (D. Conn. 2001) (unjust enrichment); *Auto Channel, Inc. v. Speedvision Network, LLC*, 144 F. Supp. 2d 784, 790, 793, (W.D. Ky. 2001) (unfair competition and misrepresentation); *Glasstech, Inc. v. TGL Tempering Sys., Inc.*, 50 F. Supp. 2d 722, 730–31 (N.D. Ohio 1999) (common law claim of misappropriation of trade secrets as well as quantum merit and unjust enrichment); *Powell Prods., Inc. v. Marks*, 948 F. Supp. 1469, 1474–76 (D. Colo. 1996) (unfair competition and conversion); *Web Communications Group, Inc. v. Gateway 2000, Inc.*, 889 F. Supp. 316, 321 (N.D. Ill. 1995) (unjust enrichment); *Hutchison v. KFC Corp.*, 809 F. Supp. 68, 71–72 (D. Nev. 1992) (Nevada statute, unjust enrichment and unfair competition); *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 755 F. Supp. 635, 636–37 (D. Del. 1991) (unfair competition/unfair trade or business practices); *R.K. Enterprise, LLC v. Pro-Comp Mgmt., Inc.*, 158 S.W.2d 685, 689-90 (Ark. 2004) (conversion and conspiracy); *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 898 (Del. 2002) (unfair competition and conspiracy); *Weins v. Sporleder*, 605 N.W.2d 488, 491 (S.D. 2000) (fraud and deceit); *Ed Nowogroski Ins., Inc. v. Rucker*, 944 P.2d 1093, 1097 (Wash. App. 1997) (misuse of confidential information and intentional interference).

empted if they are based on the unauthorized use of information that does not meet the statutory requirements of a trade secret. However, we do not find these cases persuasive. In *Combined Metals of Chicago Ltd. P'ship v. Airtek, Inc.*, 985 F. Supp. 827, 830 (N.D. Ill. 1997), the court agreed with the claimant that dismissal of its claim of breach of a fiduciary duty on preemption grounds was premature, because if the information did not prove to be a trade secret under the Illinois statute, as alleged, the preemption provision was inapplicable. The court's analysis is brief and does not discuss, let alone counter, the reasoning relied on by the many courts that have come to the opposite conclusion.

¶ 35. In *Stone Castle Financial, Inc. v. Friedman, Billings and Ramsey & Co.*, 191 F. Supp. 2d 652, 659 (E.D. Virginia 2002), the court did discuss *Smithfield Ham*, 905 F. Supp. at 348, and a number of other cases holding that there was preemption, but we do not agree with the *Stone Castle* court's reading of those cases. The *Stone Castle* court read them to be dependent upon a determination or assumption that the alleged confidential information met the statutory definition of a trade

---

Conversely, courts have concluded there is no preemption when the other types of common law claims are based on allegations or factual showings that are either independent of or in addition to those that form the basis for a claim of misappropriation of a trade secret. *See Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 270 F. Supp. 2d 943, 949–50 (W.D. Mich. 2003) (tortious interference with contract and unfair competition); *Powell Products*, 948 F. Supp. at 1474 (interference with business relationships, conspiracy, and conversion); *Smithfield Ham and Prods. Co., Inc. v. Portion PAC, Inc.*, 905 F. Supp. 346, 348, 351 (E.D. Va. 1995) (tortious interference with contractual relations and business expectancy); *Fred's Stores of Mississippi, Inc. v. M & H Drugs, Inc.*, 725 So. 2d 902, 908 (Miss. 1998) (conspiracy).

secret. However, this reading, in our view, overlooks the fundamental reasoning of the cases discussed by the *Stone Castle* court: but for *Combined Metals*, the cases are based on the majority view that the UTSA is meant to replace tort claims for unauthorized use of confidential information with a single statutory remedy. The approach of *Stone Castle* and *Combined Metals* is inconsistent with this intent, because it allows a tort remedy for the unauthorized use of information that does not meet the statutory criteria for a trade secret.

¶ 36. In *Coulter Corp. v. Leinert*, 869 F. Supp. 733, 734–36 (E.D. Mo. 1994), the court's decision that the claim of breach of the duty of loyalty was not preempted appears to be based in part on the particular elements of that claim under Florida common law. This is helpful to Burbank only if Wisconsin common law is similar, but, as we discuss below in paragraph 39, it is not. To the extent the *Coulter* court's ruling was based on the view that a claim for the unauthorized use of confidential information not meeting the statutory definition of a trade secret is not preempted, the court does not explain why this is a reasonable construction of the statute.[13]

---

[13] The two other cases on which Burbank relies do not support its position. In *Micro Display Sys., Inc. v. Axtel, Inc.* 699 F. Supp. 202, 205 (D. Minn. 1988), the court denied summary judgment, on preemption grounds, for claims of interference with contractual relations, misappropriation, conversion, misrepresentation, conspiracy, unjust enrichment, and unfair competition claims because there were allegations or evidence of wrongdoing in addition to misappropriation of trade secrets—such as making misrepresentations to obtain the plaintiff's product and technical assistance from its employees. The court concluded that a trial was necessary to determine "whether the only real harm was the alleged misappropriation of trade

¶ 37. We are persuaded by the reasoning of the great majority of courts that have construed the pre-emption provision, and we adopt that approach. We conclude that the purpose of WIS. STAT. § 134.90(6) is to make clear that § 134.90 is intended to provide a single, uniform standard for the type of information that, in the absence of a contract, is entitled to protection from misappropriation under civil law. We construe § 134.90(6) to preempt common law claims for unauthorized use of confidential information that does not meet the statutory definition of a trade secret, as well as common law claims, however denominated, that are based solely on allegations or evidence either of misappropriation of a trade secret in violation of § 134.90(1) and (2) or unauthorized use of confidential information. We conclude that this construction best effectuates the purpose of § 134.90(6).

¶ 38. We now turn to the evidence in this case to determine whether there is evidence, in addition to the

secrets," in which case, the court recognized, the tort claims would be preempted. *Id.* at 205.

In *Lucini Italia Co. v. Grappolini*, 231 F. Supp. 2d 764, 770 (N.D. Ill. 2002), as we have noted above in paragraph 33, the court declined to dismiss the claim for breach of fiduciary duty because there were factual allegations independent of the misappropriation of trade secret claim—that the plaintiff's consultant used his position to contract on his own behalf for his own interests. However, after a trial to the court, the court again took up the preemption issue, noting that now the factual record was more fully developed. *Lucini Italia Co. v. Grappolini*, No. 01 C 6405, 2003 WL 1989605, at *22 (N.D. Ill. Apr. 28, 2003). The court concluded that the breach of fiduciary duty claim, fraud, and promissory estoppel claims were preempted by the Illinois trade secret statute because they were "inextricably linked to the trade secret claim." *Id.*

evidence of the use of Burbank's customer information, that shows that the respondents breached a fiduciary duty or aided and abetted a breach of fiduciary duty. Besides the evidence of the customer information, Burbank refers us to the complaint, which contains allegations suggesting that Sokolowski was competing with Burbank while still employed by Burbank. However, while the allegations in the complaint may have been sufficient at an earlier stage to avoid dismissal based on preemption of the fiduciary duty claims, Burbank cannot rely on allegations in the complaint to defeat a motion for summary judgment. *See Caraway v. Leathers*, 58 Wis. 2d 321, 323, 206 N.W.2d 193 (1973). Burbank points to no evidence, and we see none, that creates a reasonable inference that Sokolowski took any action during his employment that was inconsistent with his duty to his employer.

¶ 39. Burbank may be suggesting that Sokolowski had a duty not to compete with his former employer after he left Burbank's employ. However, that is not the law in Wisconsin. An employee that is an agent for his or her employer owes the employer a duty to act solely for the benefit of the employer during the term of employment; an employee breaches that duty by secretly engaging in competition with the employer during the employment term. *General Auto. Mfg. Co. v. Singer*, 19 Wis. 2d 528, 534–35, 120 N.W.2d 659 (1963). However, an agent is free to engage in competition with a principal after the employment relationship terminates, *Modern Materials, Inc. v. Advanced Tooling Specialists*, 206 Wis. 2d 435, 447, 557 N.W.2d 835 (Ct. App. 1996), unless, of course, there is a valid noncompete agreement to the contrary. *See* Wis. Stat. § 103.465, "Restrictive covenants in employment contracts."

¶ 40. We conclude the claim that Sokolowski breached his fiduciary duty to Burbank is based solely on evidence that he used and disclosed Burbank's customer information after the termination of his employment with Burbank. Accordingly, that claim and the aiding and abetting claim against United Liquid and United Grease are preempted by WIS. STAT. § 134.90(6). The circuit court therefore correctly dismissed both claims.

III. *Computer Crime, WIS. STAT. § 943.70(2)(a)(6)*

¶ 41. Burbank contends it adequately pleaded and proved a violation of WIS. STAT. § 943.70(2)(a)6, which provides a penalty for anyone who

> willfully, knowingly and without authorization . . . [d]iscloses restricted access codes or other restricted access information to unauthorized persons.[14] (Footnote added.)

---

[14] WISCONSIN STAT. § 943.70(2)(a) provides in full:

> **(2)** OFFENSES AGAINST COMPUTER DATA AND PROGRAMS.

> (a) Whoever willfully, knowingly and without authorization does any of the following may be penalized as provided in pars. (b) and (c):

> 1. Modifies data, computer programs or supporting documentation.

> 2. Destroys data, computer programs or supporting documentation.

> 3. Accesses computer programs or supporting documentation.

> 4. Takes possession of data, computer programs or supporting documentation.

> 5. Copies data, computer programs or supporting documentation.

According to Burbank, the court erroneously failed to consider the allegations in the complaint that state a claim for a violation of subd. 6 and instead limited its analysis to the allegations contained in paragraphs 14 and 15 of the complaint, which were labeled "Computer Crime of Sokolowski."

¶ 42. The circuit court concluded the complaint stated a claim for a violation of WIS. STAT. § 943.70(2)(a)4, which prohibits "willfully, knowingly and without authorization . . . [t]ak[ing] possession of data, computer programs or supporting documentation." The court apparently focused on the allegations in paragraph 14 that Sokolowski "willfully, knowingly and without authorization of Burbank took possession of computer data from Burbank's computer system in the form of a printout, which he and United Grease have used to improperly solicit business away from Burbank." (Paragraph 15 alleged that this conduct violated WIS. STAT. § 943.70(2) but did not specify the particular subdivision under paragraph (a).) The court then concluded that the undisputed evidence established that Sokolowski took possession of data containing Burbank's customer information while employed by Burbank and with Burbank's authorization. Burbank does not pursue on appeal its argument under subd. 4 but now focuses solely on subd. 6, which the court did not consider because it concluded this violation was not adequately pleaded.

¶ 43. As Burbank implicitly concedes, the circuit court was correct to begin with an analysis of the complaint, because the initial step of the summary

---

6. Discloses restricted access codes or other restricted access information to unauthorized persons.

judgment methodology is to examine the pleadings to determine whether the plaintiff has stated a claim for relief. *Green Spring Farms*, 136 Wis. 2d 304 at 315. In doing this analysis, the facts pleaded and all reasonable inferences arising from the factual allegations are accepted as true. *Prah v. Maretti*, 108 Wis. 2d 223, 229, 321 N.W.2d 182 (1982). Burbank is correct that in Wisconsin a civil pleading need not define issues or state detailed facts; only "fair notice" of what the claim is and the grounds upon which it rests is required. *State ex rel. Adell v. Smith*, 2001 WI App 168, ¶¶ 5–6, 247 Wis. 2d 260, 633 N.W.2d 231. It is also true that when a court analyzes a complaint to determine whether it states a particular claim for relief, the label given the claim in the complaint is not dispositive. *Jost v. Dairyland Power Coop.*, 45 Wis. 2d 164, 169–70, 172 N.W.2d 647 (1969). Thus, we agree with Burbank that allegations not contained in the paragraphs labeled "Computer Crime of Sokolowski" are properly considered to determine whether the complaint states a claim for relief under any subdivision of Wis. Stat. § 943.70(2)(a); we also agree that the failure to specify a particular subdivision is not fatal.[15] However, we nonetheless conclude that the allegations on which Burbank relies do not state a claim for a violation of § 943.70(2)(a)6.

---

[15] This assumes, of course, that Burbank timely presented to the circuit court its argument that allegations other than those in paragraphs 14 and 15 stated a claim for violations of Wis. Stat. § 943.70(2)(a). From our review of the record, it appears that Burbank argued violations of § 943.70(2)(a)4 and 5 in its main brief on summary judgment, and subds. 3, 4, 5, and 6 in its reply brief. Apparently the circuit court did not rule that Burbank's argument based on subd. 6 was untimely, and we therefore address it.

¶ 44. Burbank relies on these allegations in the complaint to state a claim for a violation of Wis. Stat. § 943.70(2)(a)6:

> 10. Sokolowski took information he received from Burbank's customer database and entered or directed someone to enter that information into United Grease's computer database.
>
> 11. Sokolowski and United Grease are using the valuable and confidential information obtained from Burbank to solicit customers of Burbank to do business with United Grease.
>
> 12. As a result of the illegal and unauthorized use of confidential information belonging to Burbank, Sokolowski and United Grease have succeeded in diverting substantial customer relationships away from Burbank, resulting in loss of profits to Burbank.

¶ 45. According to these allegations, Sokolowski took possession of Burbank's computer data without authorization and used it in an unauthorized manner. However, under no reasonable construction of these allegations do they amount to a "disclosure of restricted access codes or other restricted access information." Wis. Stat. § 943.70(2)(a)6. Burbank is implicitly asking this court to construe "access codes or other restricted access information" to include any computer data, but that is not a reasonable construction of the statute. The phrase "[a]ccess codes or other restricted access information" plainly refers to codes, passwords, or other information that permits access to a computer system or to programs or data within a system; the phrase does not refer to the system, program, or data accessed. Thus, subd. 6 plainly does not prohibit disclosure of data that is obtained as a result of using a restrictive

access code. As we have mentioned above, subd. 4 does prohibit taking possession of data without authorization, but neither subd. 6 nor any other subdivision prohibits disclosure without authorization of data that is obtained with authorization.

¶ 46. Although we have, consistent with summary judgment methodology, first addressed whether the complaint states a claim for relief for a violation of Wis. Stat. § 943.70(2)(a)6, we also conclude that no evidence shows a violation of subd. 6. That is, the deficiency is not only a pleading deficiency but also a lack of any proof that Sokolowski violated subd. 6. For both these reasons, Burbank is not entitled to summary judgment that Sokolowski violated § 943.70(2)(a)6 nor is it entitled to a trial on that issue. We conclude the circuit court correctly granted summary judgment in Sokolowski's favor on Burbank's claim under § 943.70(2).

*By the Court.*—Order affirmed.